UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

L&H Industrial, Inc.,

        Plaintiff

v.

Premier Magnesia, LLC,

        Defendant

Case No. 2:23-cv-00317-CDS-DJA

**Order Denying Plaintiff's Motion for Summary Judgment on Defendant's Counterclaims**

[ECF No. 40]

    This is a breach of contract action between plaintiff L&H Industrial Inc. and defendant Premier Magnesia, LLC. On March 1, 2023, L&H filed a complaint against Premier alleging that Premier had failed to pay outstanding invoices relating to work L&H performed on Premier's piece of equipment called "the 100 Crusher." Compl., ECF No. 1. On March 29, 2023, Premier filed its answer and asserted a counterclaim against L&H alleging that L&H breached the contract by failing to perform the work and provide the goods that the parties agreed to. Def.'s Answer & Countercl., ECF No. 9. L&H filed its answer to the counterclaims on April 19, 2023. Pl.'s Answer, ECF No. 16. Subsequently, L&H filed its motion for summary judgment on Premier's counterclaims (Mot. Summ. J., ECF No. 40), Premier filed its response (Def.'s Resp., ECF No. 41), and L&H replied (Pl.'s reply, ECF No. 42). For the reasons set forth herein, I deny L&H's motion for summary judgment on Premier's counterclaims.

I.     **Background**

    A.   **Premier's counterclaim**[1]

    L&H is a company that provides for the repairing and manufacturing of heavy mining equipment. ECF No. 9 at 10. Premier is a company that principally manufactures and supplies high purity calcined magnesium oxide and magnesium hydroxide products. *Id.* at 9. To assist with its mining and processing operations, Premier uses a piece of equipment called the 100

---

[1] Unless otherwise noted, the court only cites to the defendant's counterclaim to provide context to this action, not to indicate a finding of fact.

Crusher. *Id.* The 100 Crusher is one hundred years old and requires specialized parts and maintenance services to ensure it remains in good working order. *Id.* In late 2020, Premier approached L&H and asked it to perform maintenance and repairs to the 100 Crusher equipment. *Id.* at 10. Premier alleges that its multiple purchase orders, together with L&H's multiple invoices, constitute the agreement between the parties. *Id.* Issues arose between the parties, culminating in L&H filing an action against Premier alleging (1) breach of contract, (2) unjust enrichment, and (3) accounting. ECF No. 1 at ¶¶ 13–26. In response, Premier asserts three counterclaims: (1) breach of contract, (2) breach of warranty, and (3) unjust enrichment. ECF No. 9 at 15–17. Specifically, Premier alleges that L&H incorrectly installed certain parts of the 100 Crusher and, separately, damaged certain parts of the 100 Crusher, requiring Premier to replace the parts. *Id.* at 10. Premier further alleges that these improper installations and damaged parts led to the 100 Crusher failing in March of 2022. *Id.* at 12. As a result of this failure, Premier's internal maintenance personnel repaired the 100 Crusher and had to purchase additional parts from other vendors. *Id.* at 13. As a result, Premier was unable to use the 100 Crusher so it was forced to rent temporary replacement equipment. *Id.*

After the machine failure, Premier alleges that L&H performed an "inspection, rebabbitting, and rebuild of the eccentric." *Id.* at 14. After L&H performed this work, the 100 Crusher failed for a second time in November 2022. *Id.* Premier alleges that the cause of this failure was caused by a malfunction of the babbitted surface of the eccentric due to L&H's "unacceptable, unsatisfactory, and substandard pour quality." *Id.* Premier further alleges that the second 100 Crusher failure required it to purchase additional parts and repair services from other vendors, and it was yet again required to rent temporary replacement crusher equipment. *Id.*

**B. L&H's motion for summary judgment on Premier's counterclaims**

L&H filed a motion for summary judgment on Premier's counterclaims arguing that Premier "fundamentally ignores the clear and unambiguous language contained in the

quotations, orders, order acknowledgements and invoices between the parties, which limits both the duration of and remedies for L&H's limited warranty." ECF No. 40 at 1–2 (internal parenthetical omitted). L&H also argues that Premier's unjust enrichment count is precluded as a matter of law. *Id.*

In its response, Premier states that the crux of L&H's arguments regarding Premier's breach of contract and breach of warranty claims is that L&H's limited warranty was made part of the contract between Premier and L&H as an additional term under section 2–207(2) of the Uniform Commercial Code (UCC). ECF No. 41 at 8–9. Premier argues that (1) under the choice of law clause in its own terms and conditions, the contract is governed by North Carolina common law and not the UCC, the Limited Warranty was not part of the contract and (2) even if the UCC applies, there is a genuine issue of material fact as to whether the Limited Warranty satisfies section 2–207(2). *Id.* at 9–18. Premier also argues that its unjust enrichment counterclaim is premised on conduct outside the scope of the parties' contract, and thus not precluded as a matter of law. *Id.* at 27–29.

## II. Legal standard

Summary judgment is appropriate when the pleadings and admissible evidence "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). At the summary-judgment stage, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). If reasonable minds could differ on material facts, summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the facts are undisputed; the case must then proceed to the trier of fact. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Once the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts

showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323. "To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial." *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018).

### III.  Discussion

**A.  Genuine issues of material fact exist as to whether L&H's Limited Warranty is part of the contract.**

L&H argues that the plain language of the agreements[2] reflects L&H's disclaimer of certain warranties and limitation of remedies. ECF No. 40 at 14. Specifically, L&H argues that (1) the UCC governs this contract and (2) L&H's terms and conditions of sale were incorporated in its "Quotes, Order Acknowledgements, and Invoices," and Premier never objected to the terms nor countered them. *Id.* In response, Premier disputes what agreement controls, and argues that (1) common law, not the UCC, governs the agreement, (2) this contract is governed by the law of North Carolina, not Nevada, and (3) even if the UCC applies, a genuine issue of material fact exists as to whether L&H's limited warranty became an additional term. ECF No. 41 at 2.

### *1.  This is a mixed contract for services and goods.*

L&H argues that this contract is a contract for goods and is governed by the UCC, which has been codified in Nevada as Nevada Revised Statute (NRS) § 104. ECF No. 40 at 15. Under Nevada law, "between merchants[,]" a "definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms." NRS 104.2207. The UCC applies to "transactions in goods[.]" NRS 104.2102.

---

[2] I refer to two agreements because at this time it is unclear as to whether L&H's terms and conditions or Premier's terms and conditions control.

L&H first argues that the UCC governs the contract because L&H and Premier are both merchants under the definition provided by NRS 104.2207. ECF No. 40 at 16. Premier does not dispute that it is a merchant as defined in the UCC. ECF No. 41 at 10–18. L&H next argues that the UCC governs the contract between L&H and Premier because "the repaired, refurbished and rebuilt parts for the 100 Crusher are indisputably '"goods"' under the UCC." ECF No. 40 at 15; see NRS 104.2105 ("'Goods' means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid"). In response, Premier argues that it hired L&H "not to provide replacement parts for the 100 Crusher, but [to] utilize their expertise to identify long-term maintenance and repair needs for the 100 Crusher and recommend and perform work it deemed necessary." ECF No. 41 at 13. Stated otherwise, Premier hired L&H to perform a service (the maintenance and repair of the 100 Crusher), so in their view, this is a mixed contract for goods and services whose "predominant factor" is the provision of services with goods "incidentally involved." *Id.* at 12.

I agree with Premier that this is a mixed contract for goods and services.[3] The record reflects that L&H was asked to provide various "Crusher Assembly Parts." *See generally*, Pl.'s Ex. 14, ECF No. 40-16 at 2. This part of the contract undisputably involves the sale of goods. However, the record also clearly shows that Premier hired L&H not just for their ability to procure parts, but for their expertise in the subject-matter and an "overhaul" of the 100 Crusher, which is a service. Haynes Dep, Def.'s Ex. A, ECF No. 41-2 at 41:5–7 ("L&H indicated clearly to us that they possessed the subject-matter expertise to design and lead the overhaul of this primary crusher."). In his deposition, Premier's company representative, Charles Matthew Haynes, states that Premier "had L&H come in, inspect, determine the work . . . that needed to be done, how to do it, and submit proposals." *Id.* at 71:16–18. Haynes also states that "Premier contacted L&H to perform maintenance and repairs on its 100 Crusher equipment." ECF No 41-

---

[3] I make this finding pursuant to Federal Rule of Civil Procedure 56(g).

2 at 55:14–18. Further, in its own complaint, L&H identifies itself as being "engaged in the business of maintaining and repairing equipment and machinery utilized in the mining, energy aggregate and railroad industries." ECF No. 1 at ¶ 6. All of this clearly demonstrates that both services and the sale of goods were involved in the contract between L&H and Premier.

To determine whether the UCC or common law applies, I would typically apply Nevada substantive law. *See Goldberg v. Pacific Indem. Co.*, 627 F.3d 752, 755 (9th Cir. 2010) ("under *Erie*. . . federal courts are to apply state substantive law. . . to diversity cases" (citation omitted). However, when contracts include a choice-of-law clause it is typically enforced. *See Batchelder v. Kawamoto*, 147 F.3d 915, 918 (1998) ("contractual choice-of-law clauses are routinely enforced. . ."). However, the crux of the issue between the parties is that it is unclear what terms and conditions are part of the contract. Each party's terms and conditions include a choice-of-law clause. But neither party has provided sufficient information in their briefings to allow the court to resolve which choice-of-law clause should control. Subsequently, it is unclear whether this case should be analyzed under North Carolina or Nevada law and consequently, whether a mixed contract for goods and services should be governed under common law or the UCC.

If I apply Nevada law, it is likely that I would consider the case to be governed under the UCC. In *Peri & Sons v. Trical, Inc.*, the Ninth Circuit indicated that Nevada law would apply the UCC to a mixed contract for both goods and services. 1993 U.S. App. LEXIS 17454, at *4 (9th Cir. July 8, 1993) ("the modern trend is to apply Article 2 to mixed sale and services contracts"). In *Peri & Sons*, the Ninth Circuit cited to a Supreme Court of Nevada case, *Worrell v. Barnes*, 484 P.2d 573 (Nev. 1971) *overruled on other grounds by Calloway v. City of Reno*, 993 P.2d 1259 (Nev. 1971), in support. 1993 U.S. App. LEXIS 17454, at *4. In *Worrell*, a contractor was hired to remodel the plaintiff's home and installed a "leaky fitting" which subsequently caused a fire. 484 P.2d at 576. The court in *Worrell* held that the "leaky fitting" involved goods within the purview of the UCC. *Id*. The *Peri* court held that a proper reading of *Worrell* indicates that, under Nevada law, the UCC still applies to the sale of a product even when the plaintiff relies upon the services

rendered by the defendant when assessing the product and determining if it is suitable for a particular purpose. *Peri*, 1993 U.S. App. LEXIS 17454 at *7. This is the only case that provides insight into how Nevada law would treat a contract for mixed goods and services. However, given that the *Worrell* case is primarily a strict liabilities case, it is not analogous to the facts here. Moreover, that aged so I am not necessarily convinced that this is how the case should be analyzed under Nevada law today.

If I were to apply North Carolina law, I would employ the "predominant purpose" test to determine what law governs the contract. *Hensley v. Ray's Motor Co. of Forest City*, 580 S.E.2d 721, 724 (N.C. Ct. App. 2003). Determining the predominate purpose of a "mixed" contract often requires resolving issues of fact, "but whether a contract is predominantly one for goods or services is ultimately an issue of law." *SiteLock LLC v. GoDaddy.com LLC*, 562 F. Supp. 3d 283, 300 (D. Ariz. 2022). Under this test, if the predominant factor of a contract is services with the sale of goods incidentally involved, the contract is governed by common law. *Hensley*, 580 S.E.2d at 724. However, if the predominant factor of a contract is the sale of goods with services incidentally involved, the contact is governed by the UCC. *Id.* According to *Hensley*, courts should look at three factors to determine whether a mixed contract should be governed by the UCC: (1) the language of the contract, (2) the nature of the business of the supplier, and (3) the intrinsic worth of the materials. *Id.* at 724–25. L&H argues that even if North Carolina law governs the contract, under the predominant purpose test, the UCC should still govern the agreement. ECF No. 42 at 7. At this time, I cannot determine the contract's predominant purpose. The predominant purpose test requires the court to analyze the language of the contracts. *Hensley*, 580 S.E.2d at 724. Although the parties have both included various emails, quotes, and invoices signifying the relationship between them, neither party has made it clear which specific documents constitute "the agreement." ECF No. 40; ECF No. 41. Thus it appears the question of which agreement(s) apply may turn on witness credibility, making summary judgment improper. *See United States v. Smith*, 538 F.2d 1359, 1363 (9th Cir. 1976) ("The credibility

7

of a witness' testimony is for a jury to decide, not a judge.). Because it is unclear which agreement(s) controls and therefore which choice of law provision controls, there remain outstanding genuine issues of material fact so I deny L&H's motion for summary judgment on this claim.

### B. Premier's unjust enrichment claim is not precluded as a matter of law.

Premier's unjust enrichment claim contains two allegations: (1) L&H retained equipment and drawings which properly belong to Premier, and (2) L&H received payment for work and materials which conferred no benefit to Premier and in fact caused substantial damage to Premier's equipment. ECF No. 9 at 16–17. L&H argues that Premier's counterclaim for unjust enrichment should be precluded as a matter of law because the counterclaim is predicated on L&H's performance of its obligations under the agreement. ECF No. 40 at 22. In response, Premier argues that the bases for its third counterclaim have no relation to the parties' agreement. ECF No. 41 at 27. Specifically, Premier argues that L&H provides no evidence, other than a self-serving affidavit, to support that it returned Premier's equipment and does not provide any evidence demonstrating why it would be entitled to summary judgment on the issue of the retained drawings of the 100 Crusher. *Id.* at 28. Premier further argues that there must be an enforceable express contract between L&H and Premier as a matter of law to grant summary judgment to L&H on Premier's unjust enrichment counterclaim. *Id.* Because there are genuine issues of material fact regarding what terms and conditions supply the material terms of the party's agreement, Premier argues that the court cannot find that an express contract exists as a matter of law. *Id.* I agree. Both Nevada and North Carolina law hold that an action based on unjust enrichment cannot lie when there is an express written contract. *See Leasepartners Corp. v. Robert L. Brooks Tr.*, 942 P. 2d 182, 187 (Nev. 1997) ("an action based on a theory of unjust enrichment is not available when there is an express, written contract"); *Intercollegiate Women's Lacrosse Coaches Ass'n v. Corrigan Sports Enters., Inc.*, 694 F. Supp. 3d, 625, 682 (M.D.N.C. 2023) ("to grant summary judgment on [an] unjust enrichment claim, an enforceable contract must exist as

a matter of law")(applying North Carolina law). Although the parties concur that they had an agreement, the terms of said agreement are in dispute. *See* ECF No. 9 at ¶ 11; ECF No. 16 at ¶ 11 (both Premier and L&H state that there is an agreement between the parties). Because there is no dispute there is a contract between the parties, but the terms are in dispute, I cannot find that a clear, express written contract exists as a matter of law. Whether I apply North Carolina or Nevada law, Premier's motion for summary judgment on its unjust enrichment claim fails. Accordingly, it is denied.

### C.  The parties are directed to settlement.

The parties are directed to attend a settlement conference before the assigned magistrate judge. Local Rule 16-5. Should settlement be unsuccessful, L&H must refile a summary judgment that addresses whether Nevada law or North Carolina law govern the contract and whether the UCC or common law govern the contract[4] under Fed. R. Civ. P. 56(f). L&H's motion is due 30 days after the conclusion of the settlement conference, and any opposition or reply therefore are due in the accordance with the local rules. Premier's opposition must also address what state law governs the agreement(s).

## IV.   Conclusion

IT IS HEREBY ORDERED that L&H's motion for summary judgment [ECF No. 40] is **DENIED**. This matter is referred to the magistrate judge for a settlement conference.

Dated: September 30, 2024

_____
Cristina D. Silva
United States District Judge

---

[4] I recognize that the deadline for dispositive motions has passed. However, should settlement prove unsuccessful, I will sua sponte extend the dispositive motions filing deadline. *See Gilbert v. Hearn*, 2021 WL 3206830, at *2 (E.D. Cal. July 29, 2021).