UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| L&H Industrial, Inc., <br><br> Plaintiffs <br><br> v. <br><br> Premier Magnesia, LLC., <br><br> Defendants | Case No. 2:23-cv-00317-CDS-DJA <br><br> **Order Denying Plaintiff's Renewed Motion for Summary Judgment** <br><br> [ECF No. 47] |

    This is a breach of contract action between plaintiff L&H Industrial Inc. and defendant Premier Magnesia, LLC. On March 1, 2023, L&H filed a complaint against Premier alleging that Premier had failed to pay outstanding invoices relating to work L&H performed on Premier's piece of equipment called the "100 Crusher." Compl., ECF No. 1. Last September, I denied L&H's motion for summary judgment on two of Premier's counterclaims. *See* Order, ECF No. 43. L&H now files a renewed motion for summary judgment on the counterclaims, arguing there is a clear and unambiguous contract issue that is ripe for review. *See* Renew. mot. summ. j, ECF No. 47. Premier opposes the motion, arguing there remains material questions of fact regarding whether the Limited Warranty at issue here became an additional term of the contract. *See* Def.'s resp., ECF No. 48. This motion is now fully briefed. Reply, ECF No. 49.[1] For the reasons set forth herein, L&H's renewed motion for summary judgment on defendant's counterclaims is denied.

I.    **Background**

    For ease, and because the underlying allegations have not changed, I incorporate the background information set forth in the order resolving L&H's prior motion for summary judgment on the defendant's counterclaim. *See* ECF No. 43 at 1–2. Any additional facts are detailed below.

---

[1] In its reply, L&H asks for oral argument on this motion (ECF No. 49 at 15), however I have determined that no oral argument is necessary to resolve the motion so that request is denied. *See* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings.").

## II. Legal standard

I likewise incorporate the legal standard set forth in the order denying the first motion for summary judgment. *Id.* at 3–4.

## III. Summary of the pleadings

In its renewed motion, L&H maintains that its contract with Premier was between merchants and predominantly for the sale of goods—so therefore, North Carolina's UCC applies, and the additional warranty terms are an enforceable part of the contract. *See* ECF No. 47 at 6–15. L&H asserts the additional terms were provided to the defendants on at least 44 orders, over the span of about two and a half years. *Id.* at 9. L&H further argues that Premier never objected to the additional terms, and except on two occasions, Premier received and paid for parts from L&H. *Id.* at 9–15. Thus, L&H contends that Premier's counterclaims for breach of contract and breach of warranty fail. *Id.*

In opposition, Premier argues that it "never received notice of or agree[d] to L&H's Limited Warranty or any of its terms and conditions during the course of its business relationship," and that those additional terms and conditions were discussed between the parties during their thirty-month business dealings. ECF No. 48 at 4. Premier agrees with L&H that North Carolina law applies here, and consistent with this court's prior determination, this dispute involves a contract for goods or services but contends Nevada's treatment of mixed contract is irrelevant here. *Id.* at 5–6. Premier avers that North Carolina law applies, and L&H's motion fails because the contract is predominantly for services, not goods. *See id.* at 6. Premier further argues: (1) it rejected L&H's limited warranty; (2) by conceding North Carolina law applies, L&H also concedes that the terms and conditions of Premier's purchase orders constitute a contract between the parties; (3) regardless, there remain genuine issues of material fact as to whether Premier rejected L&H's limited warranty; and (4) if the court finds that the UCC applies, then there is a genuine issue of material fact as to whether L&H's limited

warranty became an additional term to the contract between the parties because it materially altered it. *Id.* at 1420.

In reply, L&H argues that the cases relied upon by Premier do not support its arguments and maintains that the contract issue here is predominantly for the sale of goods, not services, so the UCC applies. *See* Reply, ECF No. 49.

### III.  Discussion

#### A.  The UCC does not apply here.

There is no dispute that this case involves a mixed contract (i.e., a contract for goods and services), and the parties agree that North Carolina law controls here—including its "predominant purpose test." L&H, ECF No. 47 at 8; Premier, ECF No. 48 at 2, 5–6. The predominant purpose test is used to determine whether the UCC governs a mixed contract. *See Hensley v. Ray's Motor Co. of Forest City*, 580 S.E.2d 721, 724 (N.C. App. 2003) (adopting the test set forth in *Bonebrake v. Cox*, 499 F.2d 951, 960 (8th Cir. 1974)). It does so by considering which sale has more "thrust" in the contract—that is, whether the contract is predominantly for goods or services. *See Bonebrake*, 499 F.2d at 960. If the contract's predominant purpose is "the rendition of service, with goods incidentally involved (e.g., contract with artist for painting)," then the UCC does not govern. *Id.* But if the contract's predominant purpose is "a transaction of sale, with labor incidentally involved (e.g., installation of a water heater in a bathroom)," then the UCC governs. *Id.*

As I noted in my prior order, according to *Hensley*, courts should look at three factors to determine whether a mixed contract should be governed by the UCC: (1) the contract's language, (2) the nature of the supplier's business, and (3) the material's intrinsic worth. *Hensley*, 580 S.E.2d at 724–25. This determination is key because the UCC's scope is "limited to 'transactions in goods' and does not apply to contracts for the provision of services." *Id.* at 724 (citation omitted). The term "goods" means "all things (including specially manufactured goods) **which are movable at the time of identification to the contract** for sale other than the money

3

in which the price is to be paid, investment securities (article 8) and things in action." N.C. Gen. Stat. § 25-2-105(1).

There is no dispute that L&H approached Premier to repair *and* provide replacement parts for the "100 Crusher." *See, e.g.*, ECF No. 48-10 (L&H proposal stating "L&H Industrial is pleased to quote the design, construction, and installation of an external lubrication system with supporting instrumentation for the existing 100 crusher."). L&H identifies itself as being "engaged in the business of **maintaining and repairing equipment and machinery** utilized in the mining, energy aggregate and railroad industries," which supports a finding that L&H contracted with Premier to provide a service, not goods. ECF No. 1 at ¶ 6 (emphasis added).

The emails also support that the parties contracted for L&H to provide a service to Premier. As an example, the subject line of a May 28, 2020, email from L&H to Premier reads, "Primary crusher **main shaft repair** – quote update," and discusses the summary and cost for "all the recommended repairs." ECF No. 48-8 at 3 (emphasis added); *see also* ECF No. 48-8 at 2 (June 2, 2020, email discussing quote for repairs and "full reassembly"). And a June 24, 2020, email from L&H to Premier identifies the "agreed scope of work" as including (1) primary crusher teardown and inspection, (2) spider and eccentric rebuild and installation, (3) reline and full reassembly, (4) dump pocket access door, and (5) rock breaker rebuild. ECF No. 48-6 at 2. That same email discusses "eccentric repair," "disassembly and inspection, restocking and machining all of the bores, any crack repair that may be needed, machining all the bushing (to ensure fit and eliminate lead time) and pins, and reassembly." *Id.* Each of those items are services, not goods. *See Bonebrake*, 499 F.2d at 958 (stating that language referring to "equipment" is "peculiar to goods" rather than services). That same email also states, "A separate estimate for the field welding and machining of eccentric bore will be provided, as well as a modified Gantt chart highlighting the modified schedule should that work be required." *Id.* Further, another email from L&H to Premier discusses the "cost for all the recommended **repairs**," which includes "final assembly," both of which constitute a service. ECF No. 48-8 at 3 (emphasis added).

L&H also provided Premier "Inspection Reports,"[2] detailing all the things that needed to be *repaired*, which also supports the parties contracted for a service. As previously found, Premier hired L&H not just for its ability to procure parts, but for its expertise in the subject-matter and an "overhaul" of the 100 Crusher, which is a service. ECF No. 43 at 5 (citing Def.'s Ex. A, ECF No. 41-2 at 13 ("L&H indicated clearly to us that they possessed the subject-matter expertise to design and lead the overhaul of this primary crusher.").[3] And while there's no written contract between the parties, the emails reveal that the purpose behind the parties' business relationship was for L&H to *fix* Premier's crusher. Undoubtedly, parts were needed to complete the repair and there seems to be no dispute that L&H manufactured some of those parts. Further, given the age of the crusher, it is not surprising that those parts were expensive. But those parts (i.e. the goods) were incidental to the services contract, so the predominant purpose of the contract was to provide a service. *See Princess Cruises, Inc. v. Gen. Elec. Co.*, 143 F.3d 828, 833 (4th Cir. 1998) (finding that the transaction between the parties "principally concerned the rendering of services, specifically, the routine inspection and repair of the [a ship], with incidental—albeit expensive—parts supplied by the appellant"); *see also Fredeking v. Triad Aviation, Inc.*, 647 F. Supp. 3d 419, 435–36 (M.D.N.C. 2022) (finding language such as "overhaul" of a plane engine, as well as removal and reinstallation of the engine, and a work authorization form signed by the plaintiff detailing list of services or repairs, not a list of parts or goods to be sold, indicated a contract for services over goods, even where the defendant sold a propeller part to the plaintiff). As a result, as the agreement between the parties was not for goods, the UCC does not control here.

B. There remains a material fact in dispute as to the warranty terms.

L&H's renewed motion for summary judgment rises and falls premised on its argument that the UCC applies here. *See* ECF No. 47; ECF No. 49. Because I have determined the UCC

---

[2] *See* ECF No. 48-7.
[3] *See also* ECF No. 41-2 at 21 (Premier's company representative Charles Matthew Haynes testifying that Premier "had L&H come in, inspect, determine the work . . . that needed to be done, how to do it, and submit proposals."); ECF No 41-2 at 17 (Haynes stating that "Premier contacted **L&H to perform maintenance and repairs** on its 100 Crusher equipment.") (emphasis added).

does not apply, L&H's renewed motion fails. Indeed, there are outstanding issues of material fact related to L&H's Limited Warranty. For example, L&H asserts that because Premier "received" and "installed the parts from L&H more than 6 months prior to the First Failure, any warranty claim made in connection with the 100 Crusher is outside the scope of the [c]ontract." ECF No. 47 at 13. In contrast, Premier argues that it never received notice of or agreed to L&H's Limited Warranty or any of its terms and conditions during the course of its business relationship. ECF No. 48 at 4. Premier also asserts that this Limited Warranty resulted in a surprise or hardship materially altering the agreement. ECF No. 48 at 7. Accordingly, L&H's renewed motion for summary judgment is denied.

## IV. Conclusion

IT IS HEREBY ORDERED that L&H's renewed motion for summary judgment **[ECF No. 47] is DENIED.**

IT IS FURTHER ORDERED that the parties must confer and file a proposed joint pretrial order that complies with the Local Rules 16-3 and 16-4 by October 29, 2025.

Dated: September 29, 2025

_____
Cristina D. Silva
United States District Judge